IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LORIANNE JOHNSON, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Civil Action No. 3:14-CV-04213-G-BK |
| | § |
| CAROLYN COLVIN, | § |
| Acting Commissioner of Social Security, | § |
| | § |
| Defendant. | § |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 12, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 15, be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED**.

**I.      BACKGROUND**[1]

**A.     Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for Disability Insurance Benefits ("DIB) under the Social Security Act ("the Act"). In May 2012, Plaintiff filed for DIB, claiming that she had been disabled since July 2010. Doc. 8-3 at 21; Doc. 8-6 at 2. Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 8-3 at 2-4; Doc. 8-3 at 21-28; Doc. 8-5 at 5-6; Doc. 8-5 at 12-14.

---

[1] The following background comes from the transcript of the administrative proceedings, which is contained in Docket Entries 8 and 9.

B.     **Factual Background**

At the time of her alleged onset of disability, Plaintiff was 50 years old, had a high school degree, and was attending college part time. Doc. 8-3 at 47-48; Doc. 8-4 at 2; Doc. 8-7 at 8. She had worked as an accounts payable clerk for multiple employers for approximately 25 years. Doc. 8-7 at 8. Her diagnosed medical conditions included diabetes mellitus type 2, chronic anemia, chronic kidney disease, congestive heart failure, and hypertension. Doc. 8-3 at 22, 54; Doc. 8-9 at 53.

Between August 2011 and May 2013, Plaintiff had eight hospital stays totaling 26 days for treatment of her conditions. Doc. 8-8 at 13-14, 19-20; Doc. 8-9 at 32-36; Doc. 8-9 at 52, 63-64, 70; Doc. 9-1 at 26-27; Doc. 9-2 at 22-23; Doc. 9-3 at 19-56. Even while hospitalized, Plaintiff had to be resuscitated numerous times with glucose because her blood sugar level was unstable. Doc. 8-9 at 33-34; Doc. 9-8 at 13. Additionally, she went to doctors' appointments on approximately a monthly basis, chiefly for treatment of her diabetes, anemia, and heart condition. Doc. 8-10 at 9-11; Doc. 8-10 at 18-21, 25, 28-32; Doc. 8-10 at 40-42, 45, 48-51; Doc. 8-10 at 58-62, 67; Doc. 9 at 12-14, 15-17, 18-19; Doc. 9 at 24-27, 30-33, 37-41; Doc. 9 at 44-45, 46-49, 50-54; Doc. 9 at 61-65, 66-69; Doc. 9 at 75-78, 81; Doc. 9 at 85-89, 92, 95-100, 101. Plaintiff's complaints during this timeframe included out of control blood sugar levels, weakness, fatigue, shortness of breath, and an inability to feel her feet, and she needed frequent adjustments to her insulin as well as numerous blood transfusions to control her severe anemia. Doc. 8-8 at 14, 20; Doc. 8-9 at 34; Doc. 8-9 at 53, 60; Doc. 8-9 at 69; Doc. 8-10 at 9; Doc. 8-10 at 18; Doc. 8-10 at 28; Doc. 9 at 12; Doc. 9 at 71; Doc. 9-4 at 99. At times, Plaintiff reported following her diabetes diet and monitoring her blood sugar and taking her medication as directed. Doc. 8-8 at 20; Doc. 8-9 at 69; Doc. 8-10 at 94; Doc. 9 at 37; Doc. 9-2 at 22. At other

times, she reported suboptimal diabetes management. Doc. 8-10 at 10; Doc. 8-10 at 18; Doc. 8-10 at 69; Doc. 9-8 at 94.

C. **Administrative Hearing**

During the administrative hearing, Plaintiff testified that her congestive heart failure, diabetes, and anemia made her feel very weak, made it difficult to walk around and balance while walking up steps, and caused shortness of breath, incoherency, and difficulty concentrating. Doc. 8-3 at 49; Doc. 8-3 at 64, 66, 67. Plaintiff averred that she had started working at the Perot Museum part time in December 2012, and continued to do so through the date of the hearing, while also taking college courses part time. Doc. 8-3 at 46-48.

A vocational expert ("VE") testified that the tolerance for absenteeism from a job is one day per month, 12 days per year. Doc. 8-3 at 69. The VE also testified that an individual who had to be off task 20 percent of the time due to fatigue and shortness of breath could not sustain substantial gainful activity, and the limit for being off task is five minutes per hour. Doc. 8-3 at 69.

D. **The ALJ's Findings**

The ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Doc. 8-3 at 21. At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her disability onset date. Doc. 8-3 at 23. At step two, the ALJ found that Plaintiff's insulin-dependent Type 2 diabetes mellitus, chronic anemia secondary to chronic kidney disease, and history of congestive heart failure with hypertension constituted severe impairments. Doc. 8-3 at 23. The ALJ determined that none of Plaintiff's impairments met or equaled a listed impairment. Doc. 8-3 at 24. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work with lifting/carrying

up to 20 pounds occasionally and ten pounds frequently; standing/walking/sitting up to six hours in an eight-hour workday; occasionally climbing ramps and stairs; no climbing of ropes, ladders, or scaffolds; no balancing; frequent stooping, crouching, crawling, and kneeling; and no concentrated exposure to extreme heat or humidity.  Doc. 8-3 at 24.  In so finding, the ALJ determined that Plaintiff's hospitalizations were not evidence that she had disabling impairments because she was not always compliant with her medications and dietary restrictions.  Doc. 8-3 at 25-26.  At step four, the ALJ found that Plaintiff could perform her past relevant work as an accounts payable clerk.  Doc. 8-3 at 27.  The ALJ thus determined that Plaintiff was not disabled at any relevant time through the date of the decision.  Doc. 8-3 at 27.

**E.**     **New Evidence Presented to this Court**

Plaintiff attached to her summary judgment brief a letter from her primary care physician discussing Plaintiff's medical conditions and treatments, including more recent hospitalizations, amputation of several toes, several falls, a worsening of her heart problems, her serious efforts to control her diabetes, and, overall, the complicated nature of Plaintiff's numerous illnesses.  Doc. 13-1 at 1-2.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.  ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ failed to address her "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." Doc. 13 at 19-20 (quoting SSR 96-8, 1996 WL 374184).  Plaintiff maintains that the nature of her impairments and the amount of medical treatment that she requires affect her ability to maintain employment, and her substantial rights were affected by the ALJ's error because the VE testified that the tolerance for absenteeism from work is 12 days per year.  Doc. 13 at 20-24.

Defendant responds that the ALJ properly assessed Plaintiff's RFC, and her hospitalizations do not necessarily demonstrate that her symptoms wax and wane such that the ALJ was required to separately discuss the effect of those symptoms on her ability to sustain employment.  Doc. 16 at 12.  Additionally, Defendant notes that the ALJ properly considered Plaintiff's non-compliance with her medication and diet regimens and her ability to work part time and take college courses in determining her credibility.  Doc. 16 at 12-15.

Plaintiff replies that the ALJ improperly based her RFC finding not on Plaintiff's actual RFC, but rather on her projected RFC if she complied with recommended treatment and dietary restrictions.  Doc. 17 at 7-8.  Because Defendant's noncompliance argument, if successful, would mandate affirmance of the ALJ's decision, the Court will address that argument first.

*1. Noncompliance with Treatment*

In an effort to avoid remand, Defendant argues that Plaintiff's noncompliance with her medical regimen should mandate a finding that she is not disabled.  Before making a finding of noncompliance, however, the ALJ is required to follow certain requirements.  *See* 20 C.F.R. §

404.1530 ("If you do not follow the prescribed treatment without good reason, we will not find you disabled"); SSR 82-59, 1982 WL 31384, at *1.  SSR 82-59 provides that the Commissioner may make a determination that a claimant has failed to follow prescribed treatment only where all of the following conditions exist:  (1) the evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity; (2) the impairment has lasted or is expected to last for 12 continuous months from the onset of disability or is expected to result in death; (3) treatment which is clearly expected to restore capacity to engage in any substantial gainful activity has been prescribed by a treating source; and (4) the evidence discloses that the claimant has refused to follow the prescribed treatment.  Where it can be ascertained from the ALJ's decision that the claimant's purported noncompliance forms the basis for either the RFC determination or the ultimate disability finding, the ALJ must address the SSR 82-59 factors.  *See Lindsey v. Astrue*, No. 3:09-CV-1649-BF, 2011 WL 817173, at *8 (N.D. Tex. 2011) (Stickney, J.).

In this case, the ALJ considered Plaintiff's alleged noncompliance chiefly in the context of determining Plaintiff's RFC.  Doc. 8-3 at 24-26 (noting several instances of Plaintiff's lack of compliance with treatment regime and concluding that Plaintiff's hospitalizations were not considered evidence of disabling impairments due to her noncompliance).  As such, the principles contained in SSR 82-59 apply.  *See Lindsey*, 2011 WL 817173 at *8.  Because the ALJ did not follow that protocol, the Court should not uphold the ALJ's decision on that basis.

*2.  Ability to Sustain Employment*

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments.  20 C.F.R. §

7

404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). RFC refers to the most that a claimant can do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (citation omitted). "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs." *Id.* at 822. A determination that the claimant can hold whatever job he finds for a significant period of time is also required, and that determination must be supported by medical evidence. *Id.*

Nevertheless, an ALJ need not make an explicit finding regarding a claimant's ability to maintain employment in every case. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). Inherent in the definition of RFC is the understanding that the claimant has an ability to work on a sustained basis. *Dunbar v. Barnhart*, 330 F.3d 670, 671 (5th Cir. 2003). Thus, "[u]sually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank*, 326 F.3d at 619. The ALJ only needs to make a specific finding regarding a claimant's ability to maintain work where, "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* Further, "in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *See id.* at 619-20; *see also Latoski v. Astrue*, No. 09-CV-0198, 2011 WL 4526086, at *13 (N.D. Tex. 2011) (Averitte,

J.) (holding that a finding regarding the ability to maintain work is only required where the claimant's impairment remains essentially unchanged over time but waxes and wanes in its manifestations of disabling symptoms) (citing *Frank*, 326 F.3d at 619), adopted by 2011 WL 4526086 (N.D. Tex. 2011).

The *Frank* court gave an example of the type of evidence that might require a separate finding of whether a claimant has the ability to maintain employment: "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." 326 F.3d at 619. On the other hand, a claimant's testimony that his back pain caused him to have both good and bad days "simply do[es] not rise to the level of impairment anticipated by the Court in *Frank*." *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).

Specifically, in *Perez*, (1) the plaintiff claimed that his pain waxed and waned between epidural injections, which were given over time; (2) he had "good days and bad days"; and (3) his expert witness testified that he did not believe the plaintiff could reliably work a 30-hour week. *Id.* at 465-66. The court observed that the claimant had not presented any evidence indicating either (1) that he could work temporarily at a particular level of exertion but could not sustain the work, or (2) that his condition "waxes and wanes" in frequency or intensity such that his ability to maintain employment was not adequately considered in his RFC determination. *Id.* at 466. The appellate court found that the claimant's case did not fall within the scope of *Frank* because "[i]t is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Id.* at 465; *see also Halley v. Barnhart*, 58 Fed. Appx. 645, 648 (5th Cir. 2005) (holding that the ALJ did not err in failing to address the

9

claimant's ability to maintain employment where no physician pronounced the claimant unable to work because of her impairments, and her migraine headaches and panic disorder were unlike the claimant's loss of movement in *Watson* because they did not prevent her from working).

On the other hand, in *Carr v. Astrue*, the judge reversed and remanded the Commissioner's decision upon finding that the ALJ should have determined whether the claimant could maintain work on a sustained basis. No. 10-CV-1474-BH, 2011 WL 1533481, at *9-10 (N.D. Tex. 2011) (Ramirez, J.). In that case, the evidence demonstrated that the claimant (1) had been diagnosed with bipolar disorder, which by its nature fluctuated in severity; (2) had an unstable work history that did not amount to substantial gainful activity; (3) had been fired repeatedly for her outbursts; and (4) had a GAF score indicating moderate to serious impairments in her functioning). *Id.*

In this case, the ALJ did not make a finding that Plaintiff would be able to maintain employment for a sustained period in light of her diabetes, chronic anemia, chronic kidney disease, and congestive heart failure. Nevertheless, there is evidence in the record that over a 21-month period, Plaintiff spent 26 days in the hospital over eight separate stays and underwent numerous blood transfusions and insulin adjustments for treatment of these conditions. Doc. 8-8 at 13-14, 19-20; Doc. 8-9 at 32-36; Doc. 8-9 at 52, 63-64, 70; Doc. 9-1 at 26-27; Doc. 9-2 at 22-23; Doc. 9-3 at 19-56. Additionally, Plaintiff had monthly doctors' appointments to attend to these conditions. Doc. 8-10 at 9-11; Doc. 8-10 at 18-21, 25, 28-32; Doc. 8-10 at 40-42, 45, 48-51; Doc. 8-10 at 58-62, 67; Doc. 9 at 12-14, 15-17, 18-19; Doc. 9 at 24-27, 30-33, 37-41; Doc. 9 at 44-45, 46-49, 50-54; Doc. 9 at 61-65, 66-69; Doc. 9 at 75-78, 81; Doc. 9 at 85-89, 92, 95-100, 101. The medical treatment Plaintiff obtained over this period exceeds the VE's 12-day per year limit for absenteeism.

Plaintiff additionally had complaints during this timeframe for which she did not necessarily seek medical treatment on every occurrence, including weakness, fatigue, shortness of breath, and an inability to feel her feet. Doc. 8-8 at 14, 20; Doc. 8-9 at 34; Doc. 8-9 at 53, 60; Doc. 8-9 at 69; Doc. 8-10 at 9; Doc. 8-10 at 18; Doc. 8-10 at 28; Doc. 9 at 12; Doc. 9 at 71; Doc. 9-4 at 99. In short, Plaintiff presented evidence indicating that her condition "waxes and wanes" in frequency or intensity such that her ability to maintain employment was not adequately considered in the ALJ's RFC determination. *Perez*, 415 F.3d at 466.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (per curiam) (quotation omitted). However, a failure to apply the *Singletary* standard is a legal error, not a procedural error, and the Fifth Circuit has mandated that when the Commissioner "has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990). Accordingly, reversal and remand is warranted. On remand, the ALJ also should address the new medical evidence of record that Plaintiff presented to this Court for the first time. Doc. 13-1 at 1-2; *Ripley v. Chater*, 67 F.3d 552, 558 (5th Cir. 1995) (remanding a case for the ALJ to, *inter alia*, consider new medical records submitted to the district court).

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 12, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 15, be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED**.

**SO RECOMMENDED** on February 8, 2016.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); F̄ED. R. C̄IV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE